IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-00230-CMA-SKC

OWNERS INSURANCE COMPANY, an Ohio corporation,

    Plaintiff,

v.

JAMES STAHL,

    Defendant.

___

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
___

This matter is before the Court on Plaintiff Owners Insurance Company's Motion for Summary Judgment (Doc. # 130) and Defendant Mr. James Stahl's Motion for Summary Judgment (Doc. # 129). For the following reasons, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

### A.    FACTUAL HISTORY

It is undisputed that on October 29, 2016, Defendant Mr. James Stahl ("Stahl") and Ms. Karen Zohar ("Zohar"), a third party, were involved in a car accident in Colorado on I-70 West. (Doc. # 88 at 3.) Zohar was driving her personal vehicle and she carried $50,000 in bodily injury liability coverage. (Doc. # 81 at 2.) Stahl was driving a work vehicle that was insured by Plaintiff Owners Insurance Company ("Owners") with a

$1,000,000 underinsured motorist policy and a $35,000 medical payments coverage policy. After the accident, both vehicles pulled to the side of the road. (Doc. # 81 at 2.) Other than minor paint scratches, there was no damage to the vehicles. (*Id.* at 14.) Neither party alerted emergency responders. (*Id.*)

However, the parties do dispute what happened during the accident and who was responsible for the collision. Stahl alleges that Zohar caused the accident when her car crossed "several lanes of traffic" and struck Stahl's vehicle. (Doc. # 81 at 17.) In addition, Stahl claims that the impact from this caused his vehicle to "turn 90 degrees to the left" and tilt up on two wheels. (*Id.*) Owners, citing Zohar's deposition, denies these allegations. (*Id.* at 19.) Zohar explains that she heard a "loud popping sound" and felt her vehicle swerve. (*Id.*) Thinking that she may have popped a tire, she pulled to the side of the road. Only after Stahl pulled to the side of the road too did Zohar realize that their vehicles had collided. Based on an accident reconstruction report commissioned by Owners, the delta-V change in speed between the two vehicles was two miles per hour or less. (Doc. # 81 at 14.) According to the report, the change in velocity that Stahl and Zohar experienced as a result of their vehicles colliding is less than "a typical bumper car ride." (*Id.*) Furthermore, one of Owners' experts concluded that Stahl caused the accident when he rear-ended Zohar. (*Id.* at 20.)

Eleven days after the accident, Stahl sought medical treatment for pain in his neck. (Doc. # 130 at 13.) Stahl's x-rays showed chronic degenerative changes to the C5-6 and C6-7 parts of his spine, which he eventually had surgery to correct. (*Id.* at 14.) Stahl claims that his neck surgery and permanent spinal injuries were a result of the

collision with Zohar. (Doc. # 88 at 3.) Stahl calculated his total losses as a result of the collision at $875,000. (*Id.* at 5.)

Eventually, Zohar's insurance company admitted liability for the accident and paid Stahl $50,000, which was the maximum amount allowed under her policy. (Doc. # 136 at 2.) Stahl then submitted a claim to Owners for $825,000—the outstanding amount of his losses not covered by Zohar's policy. (Doc. # 88 at 7.) On January 29, 2018, Owners told Stahl that his claim was denied. (*Id.* at 7.)

**B.    PROCEDURAL HISTORY**

Owners then initiated the instant case, seeking declaratory judgment that Stahl was not entitled to receive either underinsured motorist benefits or medical payments benefits (together, "Benefits"). (Doc. # 81.) Owners asserts three claims for this relief. First, Owners claims that Stahl was either negligent in causing the accident or that Stahl does not have damages in excess of $50,000, both of which would render Stahl ineligible for Benefits. (*Id.* at 12–15.) Second, Owners asserts that, because Stahl failed to cooperate with Owners' investigation of the accident, Stahl violated Owners' policy and therefore invalidated any claim to Benefits. (*Id.* at 15–16.) Third, Owners alleges that Stahl made fraudulent statements regarding the accident, which also violated Owners' policy and invalidated Stahl's claim to Benefits. (*Id.* at 16–23.)

Stahl filed an Answer and Counter Claims on March 28, 2019. (Doc. # 88.) Notably, Stahl seeks to recover Benefits under Owners' insurance policy, and he asserts six claims for relief. (*Id.*) First, Stahl alleges that Owners breached its contract when it determined that he was not eligible for Benefits. (*Id.* at 15–17.) Second, Stahl

3

asserts that Owners breached its common law duty of good faith and fair dealing. (*Id.* at 17–20.) Third, Stahl claims that Owners violated a Colorado statute that prohibits insurance companies from unreasonably denying insureds their benefits. (*Id.* at 21.) Stahl's fourth, fifth, and sixth claims for relief allege that Owners committed fraud in violation of a Colorado statute, Owners abused the judicial process by committing malicious prosecution, and Owners violated other Colorado laws, respectively. (*Id.* at 21–25.)

During this time, Magistrate Judge S. Kato Crews established pre-trial deadlines for the disclosure of experts. Initially, both parties were to disclose affirmative experts by November 14, 2018. *See* (Doc. # 62 at 2). Stahl requested an extension, which the magistrate judge granted, extending the deadline for disclosure of affirmative experts until January 28, 2019. (Doc. # 64.) Three days before this extended deadline, Stahl again requested an extension. (Doc. # 70.) The magistrate judge concluded that Stahl had not demonstrated good cause for a second extension. (Doc. # 80.) Stahl did not submit any experts by the January 28, 2019 deadline.

Instead, more than ninety days after the deadline, **in the absence of a court order** and **without first seeking leave of the court**, Stahl served Owners with his expert disclosures. (Doc. # 135 at 4.) Magistrate Judge Crews granted Owners' motion to exclude these experts (Doc. # 107), and this Court affirmed the magistrate judge's Order (Doc. # 143). This means that Stahl has no affirmative experts to prove his claims.

4

However, Stahl had an opportunity to disclose a rebuttal witness. Owners amended its original complaint to include a new claim that, through his negligence, Stahl caused the car accident. (Doc. # 81 at 12.) Therefore, the magistrate judge allowed Stahl to disclose one rebuttal expert on the limited issue of whether Zohar or Stahl caused the accident. (Doc. # 113.) But instead of narrowly tailoring the expert disclosure report to fit within the magistrate judge's parameters, Stahl simply re-endorsed one of his affirmative experts and re-submitted that expert's comprehensive report. (Doc. # 118 at 8.) This report opined on a wide variety of issues that touched all aspects of the case, including claims upon which Stahl had the burden to prove affirmatively. (Doc. # 135 at 8.)

Once again, Magistrate Judge Crews granted Owners' motion to exclude this expert (*id.*) and this Court affirmed the magistrate judge's Order (Doc. # 143). This leaves Stahl without any qualified experts, either affirmative or rebuttal.

**C.     INSTANT MOTIONS FOR SUMMARY JUDGMENT**

On September 26, 2019, Owners moved for summary judgment on four claims. (Doc. # 130.) Owners argues that because Stahl has not qualified any experts, Stahl cannot prove that his injuries resulted from the car accident, and therefore, Stahl is not entitled to any Benefits. (*Id.* at 15.) As a result, Owners moves for summary judgment on its claim of relief that Stahl does not have damages in excess of $50,000. (*Id.* at 7–16.) Owners also moves for summary judgment against Stahl's first three claims: breach of contract, breach of the duty of good faith and fair dealing, and unreasonable denial of

insurance benefits. (*Id.* at 7–19.) Owners asserts that because Stahl cannot prove that he is entitled to Benefits, these three claims fail as a matter of law. (*Id.* at 20.)

Stahl also filed a Motion for Summary Judgment on September 26, 2019. He asks this Court to grant summary judgment against Owners on all three of Owners' claims for relief. (Doc. # 129.) First, Stahl asserts that Owners cannot prove that Stahl was negligent, and therefore, its first claim for relief fails. (*Id.* at 8–12.) Stahl fails to address the other prong of Owners' first claim for relief—that Stahl cannot prove damages in excess of $50,000. (*Id.*) Second, Stahl claims that Owners cannot meet one of the standards that vitiates insurance coverage under Owners' policy—that Owners was substantially or materially prejudiced from Stahl's non-cooperation. (*Id.* at 12–14.) Third, though fraud is another reason Owners could potentially vitiate coverage, Stahl asserts that Owners cannot prove that Stahl made fraudulent statements during Owners' insurance investigation. (*Id.* at 14–21.) Therefore, Stahl claims, this Court should grant Stahl's Motion for Summary Judgment against Owners' three claims for relief. (*Id.* at 21.)

The Court considers these two Motions for Summary Judgment in light of the applicable legal standards.

## II.     LEGAL STANDARDS

**A.     MOTION FOR SUMMARY JUDGMENT**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at

671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Where, as here, the parties file cross-motions for summary judgment, each motion is considered separately and "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). However, when faced with cross summary judgment motions, the court is "entitled to assume that no evidence needs to be considered other than that filed by the parties." *James Barlow Family Ltd. P'ship v. David Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

**B.  NECESSITY OF EXPERT TESTIMONY**

The Federal Rules of Evidence distinguish between lay witnesses and expert witnesses. Fed. R. Civ. P. 701, 702. Lay witnesses are limited to testifying about what they have perceived, and they may not opine on issues that require specialized knowledge. Fed. R. Civ. P. 701. In contrast, expert witnesses, who must be qualified by the court, can testify about the conclusions they draw after they apply reliable research methods to the facts and data of the case. Fed. R. Civ. P. 702.

For example, although lay witnesses may testify about what injuries they observed or experienced, only qualified medical experts may opine on the cause of a medical condition. *See e.g., Felkins v. City of Lakewood*, 774 F.3d 647, 652 (10th Cir. 2014) (permitting a lay witness to testify to "someone's night sweats, continuous coughing, and gradual weakening, [. . .] but only an expert could testify to whether a patient's tuberculosis "is incipient or has been arrested.") (internal citations omitted);

*Wilkins v. Kmart Corp.*, 487 F.Supp.2d 1216, 1221 (D. Kan. 2007) (allowing a plaintiff to testify about his dizziness and drowsiness, but requiring a medical expert to testify whether a specific medication caused the plaintiff's symptoms, because a "causation opinion can only be rendered on the basis of specialized knowledge held by an expert qualified by medical education, experience and training.").

Courts in this Circuit have consistently required expert medical testimony to establish a causal link between complex injuries and the alleged origins of those injuries. *Zartner v. Miller*, 760 F. App'x 558, 563–64 (10th Cir. 2019) (concluding that "when an injury lacks an obvious origin and multiple causes are possible, expert medical testimony is necessary to prove causation between a use of force and an injury."); *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957) (explaining that "where injuries complained of are of such character to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts.").

Furthermore, summary judgment is appropriate in cases of complex medical causation when a party cannot provide expert medical testimony to prove his claims. *Harvey v. U.S.*, 685 F.3d 939, 952 (10th Cir. 2012) (finding that plaintiff's "failure to provide expert evidence doomed both his misdiagnosis and surgical malpractice claims", and therefore, summary judgment was appropriate); *Mathison v. United States*, 2015 WL 854476, at *3 (D. Colo. Feb. 26, 2015) (granting summary judgment because "plaintiff cannot cure a lack of medical evidence of causation" with evidence to support temporal proximity.); *Lynch v. L'Oreal USA S/D, Inc.*, No. 11-CV-01343-RBJ-MWJ, 2012

WL 4356231, at *4 (D. Colo. Sept. 24, 2012) (granting summary judgment because Plaintiff failed to provide expert testimony for the cause of her chemical burns and facial cellulitis).

### III. ANALYSIS

**A. SUMMARY JUDGMENT IS GRANTED FOR OWNERS' CLAIM THAT STAHL IS NOT ENTITLED TO BENEFITS BECAUSE HE DOES NOT HAVE DAMAGES IN EXCESS OF $50,000**

Stahl's spinal injury is appropriately categorized as a complex medical injury with no clear causation. Although the pain in Stahl's neck allegedly developed relatively soon after the car accident, the close proximity between the accident and Stahl's pain does not necessarily mean that the accident caused Stahl's injuries.[1] One plausible alternative, as one of Owners' experts has stated, is that Stahl's "chronic degenerative" spinal issues began well before the car accident. (Doc. # 130 at 14.) Therefore, because "multiple causes" for Stahl's injuries are possible, "expert medical testimony is necessary to prove causation." *Zartner*, 760 F. App'x at 563–64.

However, Stahl's repeated failure to comply with the Court's orders related to filing of the expert reports has resulted in the preclusion of testimony by Stahl's medical experts as to the cause of his injuries. (Doc. # 143.) As a result, **Stahl cannot prove**

---

[1] "Before concluding that a general causal relation exists between conditions of type *A* and *B*, scientists generally require . . . that there be some scientifically plausible explanation or hypothesis regarding how *A* causes *B*, **and that other possible explanations for the correlation be ruled out.**" Richard W. Wright & Ingeborg Puppe, *Causation: Linguistic, Philosophical, Legal and Economic*, 91 Chi.-Kent L. Rev. 461, 490 (2016) (emphasis added). Here, because Stahl has not qualified any experts, he cannot introduce evidence that a trier of fact could use to rule out the possibility that Stahl's injuries were preexisting. *See also In re Breast Implant Litig.*, 11 F.Supp.2d 1217, 1232 (D. Colo. 1998) (describing that a "temporal relationship by itself, provides no evidence of causation.").

**that the car accident caused his injuries.** *See Franklin*, 250 F.2d at 97; *Harvey*, 685 F.3d at 952.

Without evidence of a causal link between the accident and Stahl's injuries, there can be no genuine dispute of material fact as to whether Stahl can prove that he is entitled to receive insurance compensation from Owners. Fed. R. Civ. P. 56(a); *Bones*, 366 F.3d at 875. He cannot. Therefore, the Court grants summary judgment in favor of Owners on its claim that Stahl is not entitled to Benefits under Owners' policy because he cannot prove that the car accident caused his claimed damages in excess of $50,000. Conversely, Stahl's Motion for Summary Judgment on this claim of Owners is denied.[2]

**B.    SUMMARY JUDGMENT IS GRANTED TO THREE OF STAHL'S CLAIMS FOR RELIEF**

Stahl has moved for summary judgment on his first three claims against Owners for breach of contract, breach of the duty of good faith and fair dealing, and unreasonable denial of insurance benefits. The basic premise for these claims is Stahl's assertion that Stahl is entitled to Benefits and Owners is refusing to compensate him. As described above in Section III(A), Stahl cannot prove that he is entitled to Benefits under the insurance contract. Therefore, Stahl's claims for breach of contract, breach of the duty of good faith and fair dealing, and unreasonable denial of insurance benefits all fail as a matter of law because he cannot prove that:

---

[2] For the same reason, Stahl's Motion for Summary Judgment on Owners' claims related to Stahl's non-cooperation and Stahl's fraudulent statements (Doc. # 129 at 12–21) is denied.

1.	Owners breached its contract with him when it denied him Benefits. *See Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Invs. II, LLC*, 887 F.3d 1003, 1033 (10th Cir. 2018) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted)).

2.	Owners breached any duty of good faith and fair dealing because it "acted unreasonably" when it denied him Benefits. *See Shultz v. GEICO Cas. Co.*, 429 P.3d 844, 847 (Colo. 2018) (citing *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1274 (Colo. 1985)).

3.	Owners violated C.R.S. § 10-3-1115 when it denied him Benefits.

## IV.    CONCLUSION

For the foregoing reasons, the Court:

1. GRANTS Plaintiff Owners' Motion for Summary Judgment (Doc. # 130); and

2. DENIES Defendant Stahl's Motion for Summary Judgment (Doc. # 129).

Owners did not move for summary judgment on Stahl's fourth, fifth, and sixth claims, so this Order does not address those claims. The Court will address those claims in its forthcoming order on Magistrate Judge S. Kato Crews' Recommendation relating to those claims. (Doc. # 112.)

DATED: December 5, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge